**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ANNE ELIZABETH DONNELL,      ) | |
|               ) | |
|      Plaintiff,      ) | |
| v.      ) | Cause No. |
|               ) | |
| ROCKWOOD SCHOOL DISTRICT,      ) | **JURY TRIAL DEMANDED** |
|               ) | |
| **Serve**: Tim Rooney,      ) | |
|      Registered Agent      ) | |
|      Rockwood School District      ) | |
|      Educational Facilities Authority      ) | |
|      111 East North Street      ) | |
|      Eureka, MO 63025      ) | |

## COMPLAINT

COMES NOW Plaintiff Anne Elizabeth Donnell (hereinafter "Ms. Donnell" or "Plaintiff"), by and through her undersigned counsel, and for her Complaint against Rockwood School District ("Rockwood" or "Defendant") hereby states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Rockwood for violations of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq*., the Rehabilitation Act, 29 U.S.C. 701, *et seq*., ("Rehabilitation Act") and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010, *et seq*.

2. In or around January of 2021, the Special School District ("SSD") hired Ms. Donnell to place her in a position serving as a paraprofessional and teacher's assistant within the vision department of a school in need of special support for vision services.[1]

---

[1] Paraprofessionals, such as Ms. Donnell, support students with disabilities, by pairing with and assisting them in their educational pursuits, including but not limited to assisting such students with completing directions given by

3.      In or around February 2021, Ms. Donnell was placed at Lafayette High School ("Lafayette") within the Rockwood District to assist a high school student in need of vision support.

4.      Despite Ms. Donnell's qualifications and ability to perform the essential functions of her job, Rockwood discriminated and retaliated against her on the basis of her disability, her request for the reasonable accommodation of bringing a trained service animal into Rockwood's buildings, and due to her voicing concerns that Rockwood's service animal request policy does not comply with the ADA.

5.      Although Rockwood allegedly "investigated" Ms. Donnell's request for the reasonable accommodation of the use of a service animal for over eight months, it ultimately denied her request and refused to change its service animal policy. As a result, Ms. Donnell has suffered significant damages, as more fully described herein.

## JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. 12101, *et seq.*, as amended. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

## VENUE

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), because Defendant resides in this district, as well as under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

---

the teacher, adapting lessons under the teacher's guidance, and helping students access and use technology and other tools to better adapt to life and learning with a disability.

## PARTIES

8.     Ms. Donnell is an individual who is a resident of St. Louis County, Missouri.

9.     Ms. Donnell was an employee under the ADA, Rehabilitation Act, and MHRA, who was hired to work for SSD and Rockwood as a vision paraprofessional and teacher's assistant.

10.     Upon information and belief, Defendant is incorporated as a domestic non-profit corporation, is duly organized under the Constitution of Missouri, conducts business in the State of Missouri, and has its principal place of business in St. Louis County, Missouri, at 111 East North Street, Eureka, Missouri 63025.  Defendant is an employer under the ADA, Rehabilitation Act, and the MHRA.

## FACTS

11.     Ms. Donnell is a 25-year-old woman with a disability due to visual impairment.

12.     Ms. Donnell was born prematurely at 25 weeks and developed retinopathy of prematurity resulting in blindness.  She is blind.

13.     Ms. Donnell's blindness substantially limits one or more of her major life activities.

14.     Ms. Donnell has not allowed her visual impairment disability to prevent her from pursuing and achieving many athletic and academic accomplishments.  In both grade school and high school, Ms. Donnell was assigned a paraprofessional who served as her reader, assisted with braille production, and attended certain classes to ensure that she would have all the necessary accommodations.  Ms. Donnell graduated from Ladue Horton Watkins High School.

15.     After high school, Ms. Donnell attended Belmont University, in Nashville, Tennessee, where, even with her disability, she graduated *cum laude* with a Bachelor of Science Degree in Communications Studies and a Minor in Education.

16.     Ms. Donnell attributes her personal and educational success to the individuals who helped her in her own journey with visual impairment.  Therefore, one of her lifelong goals has been to assist other visually impaired students to learn and acquire the skills necessary to help them better adapt to life with a visual impairment.

17.     Ms. Donnell used a white cane, a tool that she relied on to navigate her surroundings and to identify obstacles and orientation marks while walking from the time three years old through high school.

18.     While attending Belmont, Ms. Donnell qualified for and obtained her first specially trained service animal, a seeing eye guide dog, which has assisted Ms. Donnell ever since.

19.     The service animal plays a vital role in Ms. Donnell's daily activities by helping her navigate through a variety of situations and obstacles that she would not be able to navigate alone.

20.     On or around January of 2021, Ms. Donnell was hired through SSD to work as a paraprofessional and teacher's assistant within the vision department of a school where there was a need for vision support services.

21.     On information and belief, SSD is a party to an Educational Partnership Agreement with various "Partner Districts," which includes, but is not limited to Rockwood (the "Partnership Agreement").

22.     On information and belief, SSD is governed by a "Governing Council" made up of one member of the Board of Education from each Partner District, including but not limited to Rockwood.

23.     On information and belief, in accordance with, among other things, their Partnership Agreement, SSD and Rockwood work together, jointly, collaboratively, and in an integrated manner in, among other areas: staffing, teaching, learning and accountability, collaboration of responsibilities and resources, student services, data and technology, transportation, and career and technical education.

24.     In or around February 2021, SSD and Rockwood jointly selected Ms. Donnell for placement at Lafayette, a high school in the Rockwood District, to work with a visually impaired sophomore there.

25.     At all times relevant herein, both Rockwood and SSD were employers under the ADA, the Rehabilitation Act, and the MHRA, who jointly employed Ms. Donnell.

26.     At all times relevant herein, Ms. Donnell was an employee under the ADA, the Rehabilitation Act, and the MHRA, who was employed jointly by SSD and Rockwood.

27.     After being notified of her placement at Lafayette, Ms. Donnell was informed by the Area Coordinator of SSD's Vision Department, Betty Davidson ("Ms. Davidson"), that before she could begin training and working, she had to submit a written request to Rockwood's Superintendent asking for permission to bring her service animal into Rockwood's buildings, in accordance with Rockwood's service animal policy.

28.     At all times relevant herein, Rockwood maintained a policy governing requests to bring service animals into its buildings, Policy 1810 (hereinafter the "Policy"), which states as follows:

All requests for an individual with a disability to be accompanied by a service animal must be addressed in writing to the Superintendent and must be delivered at least ten business days prior to bringing the service animal to school or a school function. The request should indicate if the animal is required because of a disability and what work or task(s) that the service animal is expected to perform in relation to a person's disability.

…The animal will not be permitted if the district determines that the presence of the animal poses a direct threat to the health and safety of others, or it will fundamentally alter the nature of a service, program, or activity.

A true and accurate copy of the Policy is attached hereto as **Exhibit 1**, and is incorporated herein by reference.

29.     On February 12, 2021, more than ten days before Ms. Donnell was due to begin her job with Rockwood, she wrote a letter to Dr. Mark Miles, Rockwood's Superintendent ("Dr. Miles") and requested permission to bring her service animal with her, explaining that she is a "paraprofessional in the vision department" and her dog "is trained to perform the task of orientation and mobility. Her job is to guide me safely due to my disability." A true and accurate copy of the February 12, 2021 letter is attached hereto as **Exhibit 2**.

30.     Dr. Miles did not respond to Ms. Donnell's request. Instead, his assistant, Janet Sadowski, emailed Ms. Donnell on February 17, 2021, informing her that:

Dr. [David] Cobb [Executive Director of Elementary Education for Rockwood], Dr. Terry Harris [Executive Director of Student Services for Rockwood] and Dr. Carmen Harris [Director of Special Education for Special School District] all said they have been working on this request through SSD and the school so Dr. Miles will not be responding at this time.

A true and accurate copy of the February 17, 2021 email is attached hereto as **Exhibit 3**.

31.     Perplexed by the reply, Ms. Donnell immediately contacted Ms. Davidson, who, in turn, emailed Dr. Terry Harris ("Dr. Harris"), of Rockwood, on February 17, 2021, to express her understanding that the student was excited to have a vision paraprofessional who could help her use technology to access curriculum and be more independent, and asked for clarification

6

regarding the necessary next steps for Ms. Donnell to begin working with the student in need of her assistance. *See* Ex. 3.

32.    Dr. Harris responded to Ms. Davidson's question by simply stating that all further discussion regarding Ms. Donnell's assignments should take place with Ms. Chaketa Mack-Riddle ("Ms. Mack-Riddle").  *See* Ex. 3.

33.    Dr. Harris provided no further updates regarding Ms. Donnell's request.

34.    On February 17, 2021, Ms. Mack-Riddle emailed Ms. Donnell, Dr. Harris, and Mr. Miles, and others, claiming that, earlier that month, she had informed Ms. Davidson that Ms. Donnell had not been assigned to any partner district.

35.    Prior to this email communication, neither Ms. Donnell nor Ms. Davidson had been informed that Ms. Donnell was not assigned to any partner district.  In fact, up until this communication, both Ms. Donnell and Ms. Davidson believed Ms. Donnell was set to begin her placement at Lafayette as soon as Rockwood approved her request to bring her service animal onto its premises, as exhibited by Ms. Davidson's February 17, 2021, communication expressing her excitement that Ms. Donnell would be connected to a student in need of her knowledge, experience, and support.

36.    After learning, for the first time, that she was no longer being placed at Lafayette, Ms. Donnell requested clarification regarding why she was no longer assigned to a partner district and explained that it was her understanding that she had been placed at Lafayette. Additionally, Ms. Donnell informed Rockwood that its Policy does not comply with the ADA and emphasized her continued desire to work with students who are visually impaired.

37.    Among other issues, Defendant's Policy is devoid of any direction as to what Rockwood should or must do once a service animal request is received.  The Policy provides no

timeframe for any response to such requests, nor does it even state that such requests will ever receive a response. Further, there is no recourse for a service animal applicant if no response is provided in a timely manner, or ever. As a result, the Policy and/or Rockwood's training and implementation of that Policy permits the discriminatory handling of service animal requests, as occurred with Ms. Donnell.

38.     Rockwood never responded to Ms. Donnell's email following up regarding her service animal request, nor did it address her allegation that Rockwood's Policy fails to comply with Federal law, including but not limited to the ADA.

39.     Moreover, after informing Ms. Donnell that she would not be working at Lafayette, Defendant inexplicably filled that placement with another individual, a paraprofessional who did not require the use of a service animal, thereby replacing Ms. Donnell with a similarly situated individual who did not require the reasonable accommodation of a service animal.

40.     Ms. Donnell subsequently began working remotely for SSD doing braille production as, by that point, it was too late for her to be paired with any other visually impaired students.

41.     Rockwood's actions caused Ms. Donnell great emotional distress.  She believed she was going to begin her dream job of helping other visually impaired students navigate and overcome the challenges of their disability. Defendant's failure and refusal to address Ms. Donnell's service animal request denied and excluded Ms. Donnell of, among other things, enjoying the benefits of participation in such activity.

42.     Although Rockwood had a formal service animal Policy, on information and belief, it failed to properly implement that Policy and/or train its personnel concerning

8

appropriate responses to service animal requests and/or regarding accommodation of disabilities in compliance with Federal and/or State law.

43.     On May 11, 2021, Ms. Donnell, through her counsel, contacted Rockwood regarding Ms. Donnell's request and its failure to respond or to permit Ms. Donnell the protected and reasonable accommodation of use of a service animal in Rockwood facilities.

44.     On June 2, 2021, Rockwood's legal counsel communicated to Ms. Donnell's counsel that they were still investigating the matter and hoped to get back to her soon.

45.     Despite multiple follow up phone calls and emails over the subsequent months, Rockwood continued to be evasive, largely non-responsive, and when it did respond, claimed to still be investigating the matter.

46.     During a phone call between counsel on October 22, 2021, Rockwood's counsel stated that it had completed its investigation into Ms. Donnell's allegations and Rockwood decided to take no further action. Specifically, Rockwood's counsel stated that it had no plans to change its Policy, and that it believed that its Policy, practices, procedures, and method of handling service animal requests complied with State and Federal law.

47.     As of October 22, 2021, Ms. Donnell's service animal request was effectively denied.

48.     Rockwood never evaluated Ms. Donnell's service animal and made no determination that it posed any threat to the health or safety of others or that it fundamentally altered the nature of any service, program, or activity.

49.     Granting Ms. Donnell's request for the reasonable accommodation of a service animal would have caused no undue hardship on Rockwood.

9

50.     Following Rockwood's failure to address Ms. Donnell's significant concerns over Rockwood's Policy and the discrimination she suffered as a result of her disability, Ms. Donnell filed an Intake Questionnaire with the Missouri Commission on Human Rights ("MCHR") to determine MCHR coverage, and thereafter timely filed a Charge of Discrimination, on or about March 8, 2022.

51.     In accordance with her request, on September 19, 2022, Ms. Donnell received notice of her right to institute a civil action against Rockwood.

52.     This action has been filed within ninety (90) days of the issuance of Ms. Donnell's notice of the right to sue.

## COUNT I

### Disability Discrimination – Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

53.     Ms. Donnell repeats and realleges paragraphs 1 through 52 hereof, as if fully set forth herein.

54.     Ms. Donnell is blind, making her a "qualified individual with a disability" under the ADA.

55.     Ms. Donnell's disability is readily apparent.

56.     Defendant was aware of Ms. Donnell's blindness and visual impairment and of her status as a qualified individual with a disability under the ADA.

57.     Ms. Donnell is qualified to perform the essential functions of her job as a paraprofessional and teacher's assistant by virtue of her education, training, experience, and visual impairment disability. Further, Ms. Donnell could perform the essential functions of her job with Defendant with a reasonable accommodation.

10

58.     On February 12, 2021, Ms. Donnell notified Defendant of her disability and requested the reasonable accommodation of use of a service animal which is specially trained to perform orientation and mobility tasks.

59.     Defendant refused to engage in an interactive process of assisting and/or cooperating with Ms. Donnell's request for the reasonable accommodation of use of a service animal and further failed to otherwise determine whether Ms. Donnell could perform her job with any other reasonable accommodation.

60.     Defendant wholly failed and refused to engage in any communication with Ms. Donnell regarding her request for a reasonable accommodation, and, on information and belief, instead took steps to hire, and did hire, a different paraprofessional who did not require the reasonable accommodation of use of a service animal.

61.     Defendant's actions failed to provide, and effectively denied, Ms. Donnell a reasonable accommodation that would allow her to perform the essential functions of her role as a paraprofessional and teacher's assistant working at schools within the Rockwood District.

62.     Defendant failed to make any good faith effort to assist Ms. Donnell in obtaining any of the different reasonable accommodations which would have allowed her to perform the essential functions of a paraprofessional and teacher's assistant at schools within the Rockwood District.

63.     But for its lack of good faith, Defendant could have made reasonable accommodations to allow Ms. Donnell to perform the essential functions of her position as a paraprofessional and teacher's assistant. The reasonable accommodations Defendant could have provided to Ms. Donnell to allow her to perform the essential functions of her job include allowing Ms. Donnell to be assisted by a service animal.

64.     Defendant's policies, practices, and procedures, including but not limited to its Policy of requiring visually impaired individuals to request permission to bring service animals into Rockwood buildings, and which permit Defendant to entirely ignore and groundlessly deny disabled individuals like Ms. Donnell the use of such reasonable accommodations, is in violation of Federal and State law, including but not limited to the ADA, the Rehabilitation Act, and the Missouri Human Rights Act.

65.     Despite Ms. Donnell's requests that Defendant change its Policy and practices to bring itself into compliance with applicable law, Defendant has failed and refused to do so.

66.     Ms. Donnell suffered materially adverse employment actions because of Defendant's refusal to grant her request for use of reasonable accommodations necessary to accommodate her disability.

67.     Defendant knew of Ms. Donnell's disability, her request for a reasonable accommodation, and her need for such reasonable accommodation, and but for Ms. Donnell's disability, her request for a reasonable accommodation, and her need for the same, Defendant would not have discriminated against and/or taken the materially adverse employment actions against Ms. Donnell which includes but is not limited to denying Ms. Donnell access to any reasonable accommodation, stripping her of her placement, and denying her the opportunity to work at Lafayette as a paraprofessional and teacher's assistant, denying her access to Rockwood's buildings, denying her placement and opportunity to work at any other school in Rockwood's District, and forcing her to perform remote work in braille production.

68.     Ms. Donnell suffered damages as a result of Defendant's unlawful discriminatory actions, including, but not limited to, limited employment opportunities, emotional distress, and the costs of bringing this action.

69.     Defendant intentionally violated Ms. Donnell's rights and acted with malice and/or reckless indifference to Ms. Donnell's federally and state-protected rights.

## COUNT II
### Retaliation in Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12101 *et seq*.

70.     Ms. Donnell repeats and realleges paragraphs 1 through 69 hereof, as if fully set forth herein.

71.     Ms. Donnell was, at all times relevant herein, a qualified individual with a disability under the ADA who was qualified for her position as a vision paraprofessional and teacher's assistant.

72.     On February 12, 2021, Ms. Donnell engaged in the protected activity of requesting a reasonable accommodation from Defendant.

73.     On February 17, 2021, Ms. Donnell engaged in the protected activity of complaining about Defendant's discriminatory treatment of Ms. Donnell based on her disability, her requests for a reasonable accommodation, and complaining that Defendant's Policy is not ADA compliant.

74.     As a result of Ms. Donnell's disability, her request for a reasonable accommodation, and her complaints regarding Defendant's Policy and its handling of her requests, Defendant took materially adverse actions against Ms. Donnell by, among other things, revoking her employment and/or placement at a school in Rockwood's District, denying Ms. Donnell access to Rockwood's buildings, and barring Ms. Donnell from being placed elsewhere within the Rockwood District.

75.     Defendant then filled Ms. Donnell's position with a paraprofessional that neither requested nor required the reasonable accommodation of a service animal.

76.     Defendant's conduct was discriminatory and retaliatory against Ms. Donnell and was undertaken because of Ms. Donnell's disability, her request the reasonable accommodation of use of a service animal, and/or because of her complaints that Defendant's Policy violates the ADA.

77.     Ms. Donnell reasonably believed that she was being discriminated against because of her disability, her request for reasonable accommodation, her follow-ups with Defendant regarding the same, and her complaints regarding its Policy.

78.     Defendant would not have revoked her placement at Lafayette, refused to allow Ms. Donnell to work within its District, denied her access to its buildings, or chosen to hire a different paraprofessional, but for Ms. Donnell's disability, her request for a reasonable accommodation, and/or for her complaints regarding Defendant's conduct toward her and its Policy.

79.     Ms. Donnell suffered damages as a result of Defendant's unlawful retaliatory actions, including but not limited to, emotional distress, and the costs of bringing this action.

80.     Defendant intentionally violated Ms. Donnell's rights under the ADA and acted with malice and/or reckless indifference to Ms. Donnell's federally and/or state protected rights.

## COUNT III
### Discrimination in Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12101 *et seq*.

81.     Ms. Donnell repeats and realleges paragraphs 1 through 80 hereof, as if fully set forth herein.

82.     Ms. Donnell is a qualified individual with a disability under the ADA.

83.     Rockwood is a public entity, as defined under the ADA, and is subject to ADA requirements.

84.    Ms. Donnell was denied the opportunity to participate in and/or was otherwise excluded from participation in and/or was denied the benefits of Rockwood's services, programs, or activities and/or was otherwise discriminated against by Rockwood by reason of her disability in that, among other reasons, Ms. Donnell was denied access to her placement at a school in Rockwood's district, was denied access to her training, which was to take place in Rockwood's buildings, and/or was entirely denied access to Rockwood's buildings and/or was prohibited from attending any Rockwood school function for any reason because of her disability and/or her request for a reasonable accommodation.

85.    Such discrimination was caused by, and resulted from, Ms. Donnell's disability and/or her related request for a reasonable accommodation.

86.    Defendant intentionally violated Ms. Donnell's rights under the ADA and acted with malice and/or reckless indifference to Ms. Donnell's federally protected rights.

**COUNT IV**
**Disability Discrimination Under the Rehabilitation Act**
**29 U.S.C § 701 *et seq*.**

87.    Ms. Donnell repeats and realleges paragraphs 1 through 86 hereof, as if fully set forth herein.

88.    Ms. Donnell is a qualified individual with a disability within the meaning of 29 U.S.C. § 705(20), in that she is blind, and can perform the essential functions of her position as a paraprofessional and teacher's assistant.

89.    Defendant is a public entity which receives federal funds.

90.    Ms. Donnell was denied the opportunity to participate in and/or was otherwise excluded from participation in and/or was denied the benefits of Rockwood's services, programs, or activities and/or was otherwise discriminated against by Rockwood by reason of her disability

in that, among other reasons Ms. Donnell was denied access to her placement, was denied access to her training, which was to take place in Rockwood's buildings, and/or was entirely denied access to Rockwood's buildings and/or was prohibited from attending any Rockwood school function for any reason because of her disability and/or because of her request for a reasonable accommodation.

91.     Ms. Donnell was intentionally discriminated against by Defendant solely by reason of her disability and/or her request for reasonable accommodation, which motivated Defendant's conduct toward Ms. Donnell.

92.     Ms. Donnell suffered damages as a direct and proximate result of Defendant's unlawful discriminatory and retaliatory actions, including but not limited to, emotional distress, and the costs of bringing this action.

93.     Defendant intentionally violated Ms. Donnell's rights and acted with malice and/or reckless indifference to Ms. Donnell's federally and/or state protected rights.

## COUNT V
## Retaliation under the Rehabilitation Act
## 29 U.S.C § 701 *et seq.*

94.     Ms. Donnell repeats and realleges paragraphs 1 through 93 hereof, as if fully set forth herein.

95.     Ms. Donnell engaged in protected activity, including but not limited to requesting a reasonable accommodation from Defendant, following up regarding such request, and complaining about Defendant's handling of such request, and/or by complaining about Defendant's Policy failing to comply with the ADA.

96.     As a result of Ms. Donnell's disability, her request for a reasonable accommodation, her follow-ups regarding the same, and/or her complaints pertaining to

Defendant's Policy and/or its handling of her requests, Defendant took materially adverse action against Ms. Donnell by, among other things, revoking her placement at a school in Rockwood's District and/or barring Ms. Donnell from being placed elsewhere within the Rockwood District.

97.     Ms. Donnell was discriminated and retaliated against by Defendant.

98.     Defendant's conduct was retaliatory against Ms. Donnell and was motivated solely by Ms. Donnell's disability, and/or her participation in protectivity activity, including but not limited to by her requesting a reasonable accommodation and complaining that Defendant's Policy violates the ADA.

99.     A causal connection exists between the Defendant's actions and Ms. Donnell's damages in that Defendant would not have taken adverse action against Ms. Donnell but for her engaging in the above-described protected activity.

100.    Ms. Donnell suffered damages as a direct and proximate result of Defendant's unlawful discriminatory and retaliatory actions, including but not limited to, emotional distress, and the costs of bringing this action.

101.    Defendant intentionally violated Ms. Donnell's rights and acted with malice and/or reckless indifference to Ms. Donnell's federally protected rights.

**COUNT VI**
**Discrimination in Violation of the Missouri Human Rights Act**
**Mo. Stat. Rev. § 213.010 *et seq*.**

102.    Ms. Donnell repeats and realleges paragraphs 1 through 101 hereof, as if fully set forth herein.

103.    At all times relevant herein, Ms. Donnell was qualified to perform the essential functions of a paraprofessional and teacher's assistant within the Rockwood District, with the assistance of reasonable accommodations.

104.    Ms. Donnell requested the reasonable accommodation of use of a service animal to perform the essential functions of her position as a paraprofessional and teacher's assistant at a school in Rockwood's District.

105.    Despite her request for a reasonable accommodation, submitted in accordance with Rockwood's Policy, and despite Ms. Donnell's numerous follow ups regarding the same, Rockwood failed and refused to provide Ms. Donnell with the reasonable accommodation she requested, or any other reasonable accommodation, and further failed to respond to her request.

106.    Instead, Rockwood denied and excluded Ms. Donnell from participation in the opportunity to work as a paraprofessional and teacher's assistant within the Rockwood District because of her disability and/or because of her need for the reasonable accommodation of a service animal.

107.    After denying Ms. Donnell the opportunity to work as a paraprofessional and teacher's assistant, in the Rockwood District, Defendant replaced Ms. Donnell with a paraprofessional that did not require the reasonable accommodation of a service animal.

108.    The acts mentioned above were discriminatory and in violation of the Missouri Human Rights Act.

109.    The discrimination mentioned above interfered with Ms. Donnell's enjoyment of the benefits, privileges, terms, and conditions of her employment.

110.    As a direct and proximate result of the discrimination described above, Ms. Donnell suffered, among other damages, emotional distress, and the costs of bringing this action.

111.    Ms. Donnell's disability and her request for a reasonable accommodation actually played a role in, had a determinative influence on, and were motivating factors in Rockwood's discrimination against her.

112.    Defendant's conduct was outrageous because of its evil motive and/or its reckless and deliberate indifference to Ms. Donnell's statutory rights.

## COUNT VII
### Retaliation in Violation of the Missouri Human Rights Act
### Mo. Stat. Rev. § 213.010 *et seq*.

113.    Ms. Donnell repeats and realleges paragraphs 1 through 112 hereof, as if fully set forth herein.

114.    Ms. Donnell engaged in protected activity and opposed practices made unlawful under the MHRA in that she requested a reasonable accommodation, complained of disability-based discrimination, complained of Defendant's treatment of her request for a reasonable accommodation for her disability, and in that she complained of Rockwood's Policy which is not ADA compliant.

115.    Defendant thereafter took materially adverse employment action against Ms. Donnell in that it revoked her placement at a school within Rockwood's District, ignored, failed, and refused to timely respond to Ms. Donnell's request for the reasonable accommodation of use of a service animal, and eight months later, denied said request for accommodation.

116.    Ms. Donnell's disability, her request for a reasonable accommodation, and her complaints regarding Rockwood's Policy actually played a role in, had a determinative influence on, and were motivating factors in the adverse employment action Rockwood took against her.

117.    But for Ms. Donnell's disability, her request for a reasonable accommodation, and her complaints regarding Rockwood's Policy, her employment and/or placement within the Rockwood District would not have been revoked, and her request for a reasonable accommodation would not have been ignored or denied.

19

118.    Rockwood unlawfully retaliated against Ms. Donnell because of her disability, her request for a reasonable accommodation, and her complaints regarding Rockwood's Policy, in violation of § 213.070.

119.    As a direct and proximate result of the discrimination, retaliation, and other adverse employment action taken against her by Rockwood, as described above, Ms. Donnell was damaged.

120.    Defendant's conduct was outrageous because of its evil motive and/or its reckless and deliberate indifference to Ms. Donnell's statutory rights.

**WHEREFORE**, Plaintiff Anne Elizabeth Donnell respectfully requests that the Court order the following relief and remedies:

A.    That the Court find Defendant's above-described conduct is in violation of ADA, Rehabilitation Act, and the Missouri Human Rights Act;

B.    That the Court declare that Defendant's Policy, and its practices and implementation of said Policy violates the ADA, Rehabilitation Act, and the Missouri Human Rights Act;

C.    That the Court permanently enjoin Defendant from continuing their discriminatory practices and implementing such discriminatory policies;

D.    That the Court issue an Order requiring the Defendant to alter the subject Policy so as to preclude further disability discrimination;

E.    Award Plaintiff her nominal, and other damages, as applicable;

F.    Award Plaintiff punitive damages sufficient to punish Defendant's wrongdoing and to deter such like action in the future;

G.      Award Plaintiff all costs and reasonable attorneys' fees incurred in connection

with this action; and

H.      Award Plaintiff such additional, further, and/or alternative relief as the Court

deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.


Respectfully submitted,

CARMODY MacDONALD P.C.

By:/s/ Ryann C. Carmody
        Gerard T. Carmody, #24769MO
        Ryann C. Carmody, #56831MO
        Lauren G. Gamel, #69085MO
        120 South Central Avenue, Ste. 1800
        St. Louis, Missouri 63105
        (314) 854-8600 Telephone
        (314) 854-8660 Facsimile
        gtc@carmodymacdonald.com
        rcc@carmodymacdonald.com
        lgg@carmodymacdonald.com