UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANNE ELIZABETH DONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22 CV 1267 RWS |
| | ) | |
| ROCKWOOD SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Anne Elizabeth Donnell brings this action against Defendant Rockwood School District, alleging violations under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq. ("MHRA"). Rockwood moves to dismiss Donnell's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Rockwood's motion will be granted in part and denied in part.

## BACKGROUND

Donnell is a 25-year-old woman with a visual impairment (blindness) who uses a service animal in her daily activities. Donnell's service animal helps her navigate through situations that she would not otherwise be able to navigate alone. In January 2021, Donnell was hired through the Special School District ("SSD") to

work as a paraprofessional and teacher's assistant in the vision department of a school in need of vision-support services.  The SSD is a party to an "educational partnership agreement" with various partner school districts, including Rockwood. The SSD is governed by a "governing council," which is made up of one member of the board of education from each partner school district.

In February 2021, the SSD and Rockwood jointly selected Donnell for placement in Lafayette High School, a school in Rockwood, to work with a visually impaired student.  After being notified of her placement, Donnell was informed by the area coordinator of the SSD's vision department, Ms. Betty Davidson, that she needed to submit a written request to Rockwood's superintendent to bring her service animal into Rockwood's buildings.   This was in accordance with Rockwood's service-animal policy, which stated:

> The Board of Education recognizes its responsibility to permit students and/or adults with disabilities to be accompanied by a service animal (as defined by federal regulations) in its school buildings, in classrooms and at school functions, as required by the Americans with Disabilities Act, subject to the restrictions set forth in district policies and regulations.
>
> All requests for an individual with a disability to be accompanied by a service animal must be addressed in writing to the Superintendent and must be delivered at least ten business days prior to brining the service animal to school or a school function.  The request should indicate if the animal is required because of a disability and what work or task(s) that the service animal is expected to perform in relation to a person's disability.

Owners of service animals are liable for any harm or injury caused by the animal to other students, staff, visitors, and/or property.  The animal will not be permitted if the district determines that the presence of the animal poses a direct threat to the health and safety of others, or it will fundamentally alter the nature of a service, program or activity.

Any animal in the schools under this policy will comply with the restrictions set forth in district regulations relating to the qualifications, supervision and care of the animal.

On February 12, 2021, more than ten days before she was set to begin her job in Lafayette High School, Donnell wrote a letter to Rockwood's superintendent, Dr. Mark Miles, and requested permission to bring her service animal into Rockwood's buildings.  Donnell's letter read:

Dear Dr. Miles,

My name is Annie Donnell, and I work as a paraprofessional in the vision department through Special School District providing support to students with visual impairments throughout St. Louis County.  I have been placed by Betty Davidson, Area Coordinator for the vision department, to work with a student at Lafayette High School in the Rockwood School District.

Per Rockwood School District's service animal policy, I am requesting my service dog to be able to accompany me at Lafayette High School. She is a guide dog and she is trained to perform the task of orientation and mobility.  Her job is to guide me safely due to my disability.

Dr. Miles did not respond to Donnell's request, but his assistant responded on February 17, 2021.  The assistant informed Donnell that Dr. Miles would not be responding because Rockwood's executive director of elementary education, Dr. David Cobb, Rockwood's executive director of student services, Dr. Terry Harris,

and the director of special education for the SSD, Dr. Carmen Harris, all said that they had been working on Donnell's request through the SSD and Lafayette High School.  Upon receiving this communication, Donnell contacted Ms. Davidson who in turn contacted Dr. T. Harris later that day to ask for clarification regarding the necessary next steps for Donnell to begin working in Lafayette High School.  Dr. T. Harris responded that same day that all further discussion regarding Donnell's assignments should take place with Ms. Chaketa Mack-Riddle.[1]  Dr. T. Harris did not provide any further updates on Donnell's request.

Later on February 17, 2021, Ms. Mack-Riddle sent an e-mail to Donnell, Dr. T. Harris, Dr. Miles, and others, stating that she had informed Ms. Davidson earlier in the month that Donnell had not been assigned to any partner school district.  Prior to this communication, both Donnell and Ms. Davidson believed that Donnell was set to begin her placement in Lafayette High School as soon as Rockwood approved her service-animal request.  Upon learning that she was no longer being placed in Lafayette High School, Donnell requested clarification as to why she was no longer assigned to a partner school district.  Donnell also informed Rockwood that she believed its service-animal policy did not comply with federal law.

---

[1] Ms. Mack-Riddle's employer and position are not alleged in Donnell's complaint.  However, it appears from an exhibit attached to Donnell's complaint that Ms. Mack-Riddle used an e-mail address from the SSD.

Rockwood never responded to Donnell's request or allegation.  Rockwood did, however, fill the placement in Lafayette High School with another individual who did not require the assistance of a service animal.  Thereafter, Donnell began working remotely for the SSD, doing braille production because it was too late for her to be paired with another visually impaired student.  Donnell contacted Rockwood through her counsel on May 11, 2021, regarding her service-animal request and its failure to respond or permit her to use a service animal.  On June 2, 2021, Rockwood's counsel communicated to Donnell's counsel that they were still investigating the matter.  Several months later, during a call between counsel on October 22, 2021, Rockwood's counsel stated that it had completed its investigation and that Rockwood would not be taking any further action.

Donnell later filed an intake questionnaire with the Missouri Commission on Human Rights ("MCHR").  Donnell then filed a charge of discrimination on March 8, 2022, and she received a notice of her right to institute a civil action on September 19, 2022.  Donnell filed this action against Rockwood on November 28, 2022.  In her complaint, Donnell brings seven claims: (Count I) discrimination in the form of failure to provide a reasonable accommodation in violation of the ADA; (Count II) retaliation in violation of the ADA; (Count III) discrimination in violation of the ADA; (Count IV) discrimination in violation of the Rehabilitation Act; (Count V) retaliation in violation of the Rehabilitation Act; (Count VI) discrimination in

violation of the MHRA; and (Count VII) retaliation in violation of the MHRA. Rockwood moves to dismiss Donnell's complaint pursuant to Rule 12(b)(6).

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  In ruling on such a motion, I must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Hager v. Arkansas Dep't. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). I may not, however, "presume the truth of legal conclusions couched as factual allegations." Id.  While I also must generally ignore materials that are outside of the pleadings, I may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."  Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).  I may also consider "some materials that are part of the public record" such as a charge of discrimination.  Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 931 (8th Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  This requires a complaint to

contain enough factual allegations "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. Iqbal, 556 U.S. at 678.

## DISCUSSION

Rockwood moves to dismiss Donnell's complaint in its entirety pursuant to Rule 12(b)(6).  Rockwood argues that Donnell's claims fail for several reasons: Donnell's retaliation claims under the ADA and MHRA were not properly exhausted through an administrative proceeding; Donnell's claims under the ADA and MHRA are time barred; Rockwood was not Donnell's employer or joint employer; and Donnell has failed to state a claim for discrimination or retaliation.

## A.    Exhaustion of Administrative Remedies

Rockwood argues that Donnell's retaliation claims under the ADA and MHRA (Counts II and VII) should be dismissed because Donnell did not exhaust her administrative remedies.  In Counts II and VII, Donnell alleges that she engaged in the following protected activities: requesting a reasonable accommodation for her disability; complaining about Rockwood's treatment of her request for a reasonable accommodation; complaining about Rockwood's discriminatory treatment of her based on her disability; and complaining that Rockwood's service-animal policy did not comply with federal law.  Doc. 1 at ¶¶ 72–73, 114.  Donnell alleges that

Rockwood retaliated against her for engaging in these activities by revoking her placement in Lafayette High School; failing to timely respond to her request for a reasonable accommodation; denying her request for a reasonable accommodation; denying her access to its buildings; and denying her an opportunity to be placed in Lafayette High School or another school in its district. Id. at ¶¶ 74, 78, 115.

Under the ADA, a claimant must exhaust her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing a civil action. Weatherly v. Ford Motor Co., 994 F.3d 940, 944 (8th Cir. 2021). A claimant must also exhaust her administrative remedies under Missouri law by filing a charge of discrimination with the MCHR before bringing claims under the MHRA. Henson v. Union Pac. R.R. Co., 3 F.4th 1075, 1080 (8th Cir. 2021) (citing Mo. Rev. Stat. § 213.075.1). Under both statutes, administrative remedies are deemed exhausted as to all incidents of discrimination that are "like or reasonably related to" the allegations in the charge of discrimination, so the scope of a subsequent civil action may be as broad as the scope of the administrative investigation that "could reasonably be expected to grow out of" the charge of discrimination. See Weatherly, 994 F.3d at 944–45 (discussing exhaustion of administrative remedies under the ADA); Henson, 3 F.4th at 1080 (discussing exhaustion of administrative remedies under the MHRA).

The Eighth Circuit has "long treated discrimination and retaliation claims as distinct for exhaustion purposes, so that exhausting one does not usually exhaust the other." Weatherly, 994 F.3d at 945; see also Slayden v. Center of Behavioral Med., 53 F.4th 464, 468 (8th Cir. 2022) (quoting Wallin v. Minnesota Dep't of Corr., 153 F.3d 681, 688–89 (8th Cir. 1998)) ("'It is well established that retaliation claims are not reasonably related to underlying discrimination claims.'").  Here, Donnell neither mentioned retaliation in the narrative portion of her charge of discrimination nor checked the box for retaliation.  Doc. 8-1.  And the substance of Donnell's charge of discrimination relates only to her alleged denial of a reasonable accommodation and her alleged denial of placement in Rockwood due to her disability.  Id.  As a result, Donnell did not exhaust her administrative remedies with respect to her retaliation claims under the ADA and MHRA.  See, e.g., Price v. Harrah's Md. Heights Operating Co., 117 F.Supp.2d 919, 922 (E.D. Mo. 2000) ("The court concludes that by not checking the retaliation box and by not specifically alleging retaliation in the text of her charge, plaintiff deprived the charged party with notice of the charge."); Warren v. Metro Transit, No. 4:20-cv-00781 SRC, 2021 WL 124315, at *3 (E.D. Mo. Jan. 13, 2021) ("Failure to mention retaliation in the narrative portion of the charge or check the box for retaliation results in the failure to exhaust administrative remedies as to the retaliation claim.").  Rockwood's motion will therefore be granted as to Counts II and VII.

## B.     Timeliness

Rockwood argues that Donnell's discrimination claims under the ADA and MHRA (Count I, III, and VI) should be dismissed as time barred.[2]  The ADA has adopted the enforcement "procedures set forth in 42 U.S.C. § 2000e-5."  42 U.S.C. § 12117(a).  Under 42 U.S.C. § 2000e-5(e)(1), a claimant who first files a charge of discrimination with a state or local agency (like the MCHR) must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.  Slayden, 53 F.4th at 467 (citing 42 U.S.C. § 2000e-5(e)(1)).  Under the MHRA, a claimant must file a charge of discrimination with the MCHR "within 180 days of the alleged discriminatory act."  Id. (citing Mo. Rev. Stat. § 213.075.1).

Donnell filed a charge of discrimination on March 8, 2022.  Doc. 1 at ¶ 50; Doc. 8-1.  Therefore, any alleged acts of discrimination that occurred before May 12, 2021, are time barred under the ADA, and any alleged acts of discrimination that occurred before September 9, 2021, are time barred under the MHRA.  In Counts I, III, and VI, Donnell alleges that Rockwood discriminated against her by: denying her access to a reasonable accommodation; revoking her placement in Lafayette High School; denying her an opportunity to be placed in Lafayette High School or another school in its district; denying her access to its buildings; denying her access

---

[2] Rockwood also argues that Donnell's retaliation claims under the ADA and MHRA should be dismissed as time barred, but those claims will be dismissed for the reasons discussed above.

to her training, which would have taken place in its buildings; and prohibiting her from attending any school functions.  Doc. 1 at ¶¶ 67, 84, 105–06.

Rockwood argues that Donnell's claims are time barred because all alleged acts of discrimination occurred before May 12, 2021.  According to Rockwood, its last alleged act occurred on February 17, 2021, when its last communication with Donnell took place.  Rockwood also contends that Donnell knew that she was not being placed in Lafayette High School or any other school in its district as of February 17, 2021, and that she therefore knew or should have known that her service-animal request was moot or of no consequence as of that same date.

Donnell argues that her claims are timely because her communications with, and complaints to, Rockwood continued beyond February 17, 2021.  According to Donnell, she alleges that Rockwood continued discriminating against her at least through October 22, 2021, when Rockwood's counsel stated during a call between counsel that it had completed its investigation into her allegations and that Rockwood would not be taking any further action.  As alleged in Donnell's complaint, her service-animal request "was effectively denied" as of October 22, 2021.  Donnell also argues that her discrimination claims are timely because she alleges a "continuing violation" and that Rockwood's discrimination against her resulted from a current discriminatory policy and Rockwood's ongoing practice of implementing that policy in a discriminatory manner.

Contrary to Donnell's suggestion, the continuing-violation doctrine is not applicable to the facts as alleged in this case.  The Supreme Court's decision in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), is instructive on the continuing-violation doctrine under federal law.  In Morgan, the Supreme Court clarified that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113. The Supreme Court stated that some discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and that each incident of discrimination "constitutes a separate actionable 'unlawful employment practice.'" Id. at 114.  The Supreme Court distinguished hostile-work-environment claims, however, stating that they are "different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." Id. at 115.  With hostile-work-environment claims, the unlawful employment practice "cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id.  In light of these principles, the Supreme Court held that a plaintiff "raising claims of discrete discriminatory … acts must file [her] charge within the appropriate time period" but that a hostile-work-environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment

practice and at least one act falls within the time period." Id. at 122.  The latter theory of recovery is often referred to as a continuing violation.

Missouri law is not contrary to federal law under Morgan because Missouri courts have concluded that application of the "MHRA's 180-day statute of limitations is subject to equitable exceptions, including the continuing violation doctrine." Rowe v. Hussmann Corp., 381 F.3d 775, 782 (8th Cir. 2004) (citing Pollock v. Wetterau Food Distrib. Grp., 11 S.W.3d 754, 763 (Mo. Ct. App. 1999)). Similar to federal law, in determining the timeliness of a claim under the MHRA, "at one end of the spectrum are events that can be identified individually as significant events" while "[o]n the other end of the spectrum are continuing violations that consist of repeated conduct extending over a period of time." Tisch v. DST Sys., Inc., 368 S.W.3d 245, 253–54 (Mo. Ct. App. 2012) (internal quotation marks omitted).  Missouri courts apply a two-part test to determine whether a plaintiff has established a continuing violation: "The plaintiff must first 'demonstrate that at least one act occurred within the filing period' and, second, must show 'that the harassment is a series of interrelated events, rather than isolated or sporadic acts of discrimination.'" Rowe, 381 F.3d at 782 (quoting Pollock, 11 S.W.3d at 763). To establish a continuing violation under the MHRA, a plaintiff must show "'a series of closely-related, similar events that occurred within the same general time period

and stemmed from the same source that continued into the limitations period.'"

Tisch, 368 S.W.3d at 254 (quoting Pollock, 11 S.W.3d at 763).

The alleged acts of discrimination in this case are discrete acts—that is, acts that can be identified individually as significant events.  For example, Rockwood's alleged denial of Donnell's request for a reasonable accommodation may be actionable in and of itself.  See Dick v. Dickinson State Univ., 826 F.3d 1054, 1059 (8th Cir. 2016) (internal quotation marks omitted) ("[A]n employer's denial of a request for a reasonable accommodation … is a discrete act of discrimination that is an independently actionable unlawful employment practice under the ADA.").  Rockwood's alleged revocation of Donnell's placement in Lafayette High School, much like a termination, may also be actionable.  Rockwood's alleged denial of Donnell's opportunity to be placed in Lafayette High School or another school in its district, much like a refusal to hire, may also be actionable.  And Rockwood's alleged denial of Donnell's access to its buildings, her training, and its school events may be actionable as well.  Because the alleged acts of discrimination in this case are discrete acts, the continuing-violation doctrine is inapplicable, and the question is whether each of the alleged acts is time barred.

Based on the allegations in Donnell's complaint and charge of discrimination, the alleged acts of discrimination in this case are time barred under the ADA and MHRA.  Rockwood's alleged revocation of Donnell's placement in Lafayette High

School is time barred because the alleged revocation occurred by February 17, 2021. See Doc. 1 at ¶ 34 (alleging Ms. Mack-Riddle sent an e-mail to Donnell, Dr. T. Harris, Dr. Miles, and others on February 17, 2021, stating that she had informed Ms. Davidson earlier in the month that Donnell had not been assigned to any partner school district). Rockwood's alleged denial of Donnell's opportunity to be placed in Lafayette High School or another school in its district is time barred because the alleged denial occurred by May 11, 2021. See Doc. 8-1 (Rockwood "had effectively denied [Donnell] an opportunity to be placed at a school within [its] district" as of May 11, 2021, when Donnell's counsel followed up with Rockwood). Rockwood's alleged denial of Donnell's request for a reasonable accommodation is also time barred because Donnell's request was made to enable her to be placed in Rockwood, and she was allegedly denied an opportunity to be placed in Rockwood by May 11, 2021. See id. Finally, Rockwood's alleged denial of Donnell's access to its buildings, her training, and its school events is similarly time barred because Donnell does not allege that she sought such access for any reason other than her placement in Rockwood, and she was allegedly denied an opportunity to be placed in Rockwood by May 11, 2021. See id.

Donnell's additional argument that her claims are timely because she alleges discrimination resulting from Rockwood's current discriminatory policy and ongoing practice of implementing that policy in a discriminatory manner is

unavailing.  Donnell argues that challenges to "ongoing patterns and practices of discrimination and current policies are, by their nature, continuing violations which are always timely."  This argument fails for several reasons.  First, although the Supreme Court in <u>Morgan</u> did not consider how its analysis would impact a pattern-or-practice case, <u>Morgan</u>, 536 U.S. at 115 n.9, this is not a pattern-or-practice case, and I find no basis for not applying the analysis in <u>Morgan</u> to the facts as alleged here.  Indeed, "[a] discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of which must be brought within the statutory limitations period." <u>Lyons v. England</u>, 307 F.3d 1092, 1108 (9th Cir. 2002).  Second, even when alleged acts of discrimination result from an alleged discriminatory policy, claims based on those acts are not "always timely."  In such a situation, the statute of limitations begins to run when the alleged discriminatory policy is applied to the plaintiff.  <u>See</u> <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 745 (8th Cir. 2004) (holding that "the statute of limitations period began when the allegedly discriminatory pension plan was applied to the plaintiffs; that is, when each of them retired and became eligible for benefits").  Based on the allegations in Donnell's complaint and charge of discrimination, Rockwood's alleged discriminatory policy was applied to Donnell before May 12, 2021, when the alleged acts of discrimination occurred.

Because the alleged acts of discrimination in Counts I, III, and VI occurred before May 12, 2021, they are time barred under the ADA and MHRA.[3] Rockwood's motion will therefore be granted as to Counts I, III, and VI.

## C.     The Rehabilitation Act

The remaining claims in this case are those brought under the Rehabilitation Act (Counts IV and V).  In Count IV, Donnell alleges that she was excluded from and denied the benefits of Rockwood's services, programs, or activities and/or was otherwise discriminated against by Rockwood because of her disability.  Doc. 1 at ¶ 90.  Donnell alleges that Rockwood discriminated against her by denying her access to her placement in Lafayette High School or another school in its district; denying her access to her training, which would have taken place in its buildings; denying her access to its buildings; and prohibiting her from attending any school functions. Id.  In Count V, Donnell alleges that Rockwood retaliated against her for requesting a reasonable accommodation; following up on her request for a reasonable accommodation; complaining about its handling of her request for a reasonable accommodation; and complaining that its service-animal policy did not comply with federal law.  Id. at ¶¶ 95–96, 98.  Donnell alleges that Rockwood retaliated against

---

[3] To the extent Donnell claims that Rockwood continued to deny her a reasonable accommodation, an opportunity to be placed in Lafayette High School or another school in its district, and access to its buildings, her training, and its school events beyond May 11, 2021, she has not alleged sufficient facts to support such a claim.  See Twombly, 550 U.S. at 555 (a complaint must contain enough factual allegations "to raise a right to relief above the speculative level").

her by revoking her placement in Lafayette High School and/or denying her an opportunity to be placed in a school in its district.  Id. at ¶ 96.  I will address Rockwood's remaining arguments as they apply to these claims.

    1.    <u>Employer or Joint Employer</u>

Rockwood argues that, to the extent Donnell's claims are based on employment discrimination, they should be dismissed because she does not allege sufficient facts showing that it was her employer or joint employer.  In support of this argument, Rockwood cites several cases discussing when separate entities— such as the SSD and Rockwood—may be treated as a single employer or joint employer.  A court must consider several factors when determining whether separate entities should be treated as a single employer or joint employer: "(1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) the centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities."  <u>Davis v. Ricketts</u>, 765 F.3d 823, 827 (8th Cir. 2014).

Upon review of Donnell's complaint, I find that her allegations are sufficient at this stage to show that she was employed by Rockwood.  Donnell alleges that she was hired to work for the SSD and Rockwood.  Doc. 1 at ¶ 9.  Donnell alleges that she was "employed jointly" by the SSD and Rockwood.  Id. at ¶¶ 25–26.  And Donnell alleges that the SSD and Rockwood "jointly selected" her for placement in

Lafayette High School.  Id. at ¶ 24.  Donnell alleges further that the SSD and Rockwood are parties to an "educational partnership agreement;" that the SSD is governed by a "governing council," which includes a member of Rockwood's board of education; and that the SSD and Rockwood "work together, jointly, collaboratively, and in an integrated manner in, among other areas: staffing, teaching, learning and accountability, collaboration of responsibilities and resources, student services, data and technology, transportation, and career and technical education." Id. at ¶¶ 21–23.  These factual allegations, which must be accepted as true and viewed in the light most favorable to Donnell, are sufficient to show that Donnell was jointly employed by the SSD and Rockwood.

### 2.     Failure to State a Claim

Rockwood also argues that Donnell's claims should be dismissed because she has failed to state a claim for discrimination or retaliation.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her … disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" that receives federal funding.  29 U.S.C. § 794(a).  Donnell alleges that Rockwood is an entity that receives federal funding, Doc. 1 at ¶ 89, and she brings two claims under the Rehabilitation Act: a claim for discrimination, and a claim for retaliation.

To state a claim for discrimination under the Rehabilitation Act, a plaintiff must plausibly allege that: (1) she was disabled; (2) she was qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment action due to her disability.  Dick, 826 F.3d at 1060.  An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage."  Id. (internal quotation marks omitted).  Some examples include "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects."  Id. (internal quotation marks omitted).  An employer also "discriminates against an employee if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee."  Id. at 1059 (internal quotation marks omitted).

Donnell has stated a claim for discrimination under the Rehabilitation Act. Donnell alleges that she was under a disability, specifically, a visual impairment (blindness). Doc. 1 at ¶¶ 11–13.  Donnell alleges that she was a qualified individual capable of performing the essential functions of her job as a paraprofessional and teacher's assistant.  Id. at ¶¶ 4 & 88.  And Donnell alleges that she suffered an adverse employment action due to her disability: being denied placement in Lafayette High School or another school in Rockwood.  Id. at ¶ 90.  Donnell also alleges that Rockwood denied her a reasonable accommodation.  Id. at ¶ 5.

Accepting these factual allegations as true, I find that Donnell has stated a claim for discrimination under the Rehabilitation Act.  Rockwood's motion will therefore be denied as to Count IV.  However, I agree with Rockwood that Donnell has failed to state a claim for non-employment-related discrimination because she does not allege that she sought access to Rockwood's services, programs, or activities for any reason other than her placement in Rockwood.

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must plausibly allege that: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.  Turner v. Mull, 784 F.3d 485, 493 (8th Cir. 2015).  Protected activity includes "an informal or formal complaint about, or other opposition to, an employer's practice or act … if the employee reasonably believes such an act to be a violation of the statute in question."  Sherman v. Runyon, 235 F.3d 406, 409 (8th Cir. 2000).  Making a good faith request for a reasonable accommodation is also a protected activity.  See Withers v. Johnson, 763 F.3d 998, 1004 (8th Cir. 2014) ("This court has held that a person who is terminated after making a good faith request for an accommodation may pursue a retaliation claim under the ADA and the Rehabilitation Act.").

Donnell has stated a claim for retaliation under the Rehabilitation Act. Donnell alleges that she engaged in several protected activities, including requesting

a reasonable accommodation; complaining about Rockwood's handling of her request for a reasonable accommodation; and complaining that Rockwood's service-animal policy did not comply with federal law.  Doc. 1 at ¶ 95.  Donnell also alleges that Rockwood took adverse employment action against her for engaging in these protected activities, specifically, revoking her placement in Lafayette High School and/or denying her an opportunity to be placed in a school in its district.  Id. at ¶ 96. While some of Donnell's alleged protected activities may have occurred after Rockwood's alleged adverse employment action, Donnell has at least plausibly alleged that a causal connection exists between her request for a reasonable accommodation and Rockwood's alleged adverse employment action.  As a result, I find that Donnell has stated a claim for retaliation under the Rehabilitation Act, and Rockwood's motion will be denied as to Count V.

**D.    Donnell's Request for Leave to Amend**

In her memorandum in opposition to Rockwood's motion to dismiss, Donnell requests, in the alternative, that I grant her leave to amend her complaint.  To the extent that Donnell seeks to amend her complaint, she must file an appropriate motion along with a proposed amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Rockwood School District's motion to dismiss [7] is **GRANTED** as to Counts I, II, III, VI, and VII and **DENIED** as to Counts IV and V.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 25th day of April 2023.